1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   NORDYKE, ET AL,                      No. C99-04389 MJJ

12              Plaintiff,               **ORDER GRANTING DEFENDANTS'
                                         MOTION FOR SUMMARY JUDGMENT**
13       v.

14   KING, ET AL,

15              Defendant.
     _____/
16

17                            **INTRODUCTION**

18       Before the Court is Defendants Mary King, Gaile Steele, Wilma Chen, Keith Carson, Scott

19   Haggerty, the County of Alameda, and the County of Alameda Board of Supervisors' (collectively

20   "Defendants" or "County") Motion for Summary Judgment on Plaintiffs' Third Amended

21   Complaint.[1]  Plaintiffs Russell Nordyke, Sallie Nordyke, doing business as TS Trade Shows, et al.

22   (collectively, "Nordykes" or "Plaintiffs") oppose[2] the motion.  For the following reasons, the Court

23   **GRANTS** Defendants' Motion for Summary Judgment.

24                            **BACKGROUND**

25   **I.      Factual Background**

26       Except as otherwise noted, the Court finds the following facts undisputed.

27       Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, alleging that Alameda County

28   _____
         [1]Docket No. 129.

         [2]Docket No. 144.

**United States District Court**
For the Northern District of California

1  Ordinance Code Section 9.12.120[3] (the "Ordinance") infringes on their free speech rights in

2  violation of the United States and California Constitutions.[4]  The group of Plaintiffs consists of

3  Russell and Sallie Nordyke, who have been promoting gun shows at the Alameda County

4  Fairgrounds ("Fairgrounds") since 1991, as well as twelve gun show vendors, exhibitors, and

5  patrons.  The exhibitors at the show include sellers of antique (pre-1898) firearms, modern firearms,

6  ammunition, Old West memorabilia, and outdoor clothing.  The gun shows also hosts educational

7  workshops, issue groups, and political organizations.

8      Plaintiffs' gun shows bring large numbers of firearms to one location.  The approximate

9  attendance at one of Plaintiffs' gun shows at the Fairgrounds is 4,000 people.  These gun shows

10  involve the exhibition, display, and sale of firearms.  When a gun is sold at Plaintiffs' gun shows,

11  both the seller and the buyer physically inspect the gun to insure correct documentation of the serial

12  number, make, model, and caliber of the gun; and also to verify that the firearm may be legally sold.

13

14      Plaintiffs allege that they "have historically brought firearms onto . . . the Alameda County

15  Fairgrounds for various symbolic and expressive purposes."  They allege that, by prohibiting

16  possession of firearms at the Fairgrounds, the Ordinance prevents them from engaging in this

17  expressive conduct, and makes gun shows virtually impossible.

18      On July 4, 1998, a shooting occurred at the Alameda County Fairgrounds during the annual

19  County Fair resulting in gunshot wounds to eight people.  The shooting was not associated with any

20  of the Plaintiffs or their gun show activities at the Fairgrounds.  On August 17, 1999, the County

21  adopted the Ordinance prohibiting the possession of firearms on County Property, including the

22  Fairgrounds.  The Ordinance recited the epidemic of gunshot fatalities or injuries in the county as

23  justification.  In particular, between 1990 and 1995, 879 homicides were committed using firearms

24  and 1,647 additional victims were hospitalized with gunshot injuries in the County.  The Ordinance

25

26      [3]Section 9.12.120(b) provides, "Every person who brings onto or possesses on County property a firearm, loaded
27  or unloaded, or ammunition for a firearm is guilty of a misdemeanor."  (Alameda County Gen. Ord. Code, ch. 9.12, §
    9.12.120, subd. B.)  In accordance with Defendants' unopposed request, the Court will take judicial notice of the Ordinance.
28  *Rabkin v. Dean*, 856 F. Supp. 543, 546 (N.D. Cal. 1994).

      [4]Docket No. 100, Third Amended Complaint.

2

1   also recited the July 4, 1998 shooting incident on the Fairgrounds.

2           The Ordinance was subject to certain limitations and exceptions.  County property did not

3   include any "local public building" as defined in California Penal Code section 171b, subdivision

4   (c). (Alameda County Gen. Ord. Code, ch. 9.12, § 9.12.120, subd. C.)  Pursuant to an amendment on

5   September 28, 1999, the Ordinance exempted from the prohibition various classes of persons,

6   including peace officers, various types of security guards, persons holding valid firearms licenses

7   pursuant to Penal Code section 12050, and authorized participants "in a motion picture, television,

8   video, dance, or theatrical production or event when the participant lawfully uses the firearm as part

9   of that production or event, provided that when such firearm is not in the actual possession of the

10  authorized participant, it is secured to prevent unauthorized use."  (Alameda County Gen. Ord.

11  Code, ch. 9.12, § 9.12.120, subd. F.)  The Ordinance would have, as one of its chief consequences,

12  the effect of forbidding the unsecured presence of firearms at gun shows.  After passing the

13  Ordinance, the County sought a written plan from Plaintiffs on how Plaintiffs would conduct their

14  gun shows in compliance with the Ordinance.

15          Plaintiffs subsequently informed the County that Plaintiffs could not practically or profitably

16  conduct a gun show without guns.  As a result of the Ordinance, Plaintiffs cancelled a gun show

17  scheduled for November 6 and 7, 1999.  Shortly thereafter, the County released all Plaintiffs'

18  reserved dates for the year 2000 and returned Plaintiffs' deposits.  As justification, Defendants cited

19  Plaintiffs' inability to produce a plan to hold gun shows without firearms that would comply with the

20  Ordinance.  Plaintiffs have held approximately twenty two gun shows in California since 2005.

21          Other groups, besides Plaintiffs have been affected by the Ordinance.  Specifically, during

22  the months of August and September 1999, the Scottish Caledonian Games ("Scottish Games")

23  contacted the County regarding the Ordinance's impact on their cultural events.  The Scottish Games

24  involve the possession of rifles with blank cartridges in connection with historical re-enactments of

25  gun battles.  The County did not require the Scottish Games to submit a written plan for conducting

26  their event in compliance with the Ordinance.

27  **II.     Procedural Background**

28          A detailed summary of the procedural history of this action is helpful in framing the issues

United States District Court
For the Northern District of California

3

1   currently before this Court.

2         Initially, Plaintiffs alleged that the Ordinance prevented them from conducting their trade

3   show business and violated their right to free speech.  To prevent Defendants from enforcing the

4   Ordinance, Plaintiffs sought a temporary restraining order.[5]   After this Court denied Plaintiffs'

5   request, Plaintiffs filed an interlocutory appeal.  The Ninth Circuit affirmed, construing Plaintiffs'

6   First Amendment claim as a facial challenge to the Ordinance.  *Nordyke v. King*, 319 F.3d 1185,

7   1189 (9th Cir. 2003).  In evaluating Plaintiffs' claim, the Ninth Circuit noted that gun possession

8   may qualify as speech when there is "an intent to convey a particularized message, and the

9   likelihood is great that the message would be understood by those who viewed it."  *Id*. (citing *Spense*

10  *v. Washington*, 418 U.S. 405, 410-11 (1974)).  However, because Plaintiffs did not allege that the

11  Ordinance is directed narrowly and specifically at expression, and because possession of a gun is not

12  commonly associated with expression, the court held that Plaintiffs' facial challenge failed.  *Id*. at

13  1190.  In a footnote, the court indicated that its holding did not prevent Plaintiffs from bringing an

14  "as applied" challenge to the Ordinance.  *Id*. at 1190 n.3.

15        Seizing on this language, Plaintiffs filed a Second Amended Complaint, re-casting their

16  claim as an "as applied" First Amendment challenge.[6]   Specifically, Plaintiffs alleged that as applied

17  to their use of the Fairgrounds, the Ordinance violated their freedom of expression by making gun

18  shows impossible.  In support of their position that gun possession amounts to expressive conduct,

19  Plaintiffs alleged that they have historically brought firearms to the Fairgrounds to: (1) serve as

20  mediums of political messages that are inextricably intertwined with the actual firearm; (2)

21  emphasize the military and historical importance of guns; (3) instruct others about safe and

22  responsible gun storage and handling; and (4) facilitate legal education of the public of their rights

23  and duties as gun owners.[7]   Defendants moved to dismiss Plaintiffs' claim pursuant to Rule

24

25        [5]Docket Nos. 1 and 38.

26        [6]Plaintiffs filed an Amended Complaint in November 1999, which Defendants moved to dismiss.  However, before
    the Court could rule on the Motion, Plaintiffs filed their interlocutory appeal.  After the Ninth Circuit issued its decision and
27  the case continued in this Court, Plaintiffs filed their Second Amended complaint, superceding the Amended Complaint and
    mooting Defendants' Motion to Dismiss.

28        [7]Docket No. 97.

4

United States District Court

For the Northern District of California

1   12(b)(6).[8]

2       This Court granted Defendants' motion reasoning that Plaintiffs had not adequately alleged

3   an intent to convey a particularized message by possessing guns on County property.  *See Spence v.*

4   *Washington*, 418 U.S. 405, 410-11 (1974).  This Court stated that Plaintiffs' mere recitals of

5   "political messages that are inextricably intertwined with the actual firearm" fail to allege the

6   "particularized" nature of the political message being communicated by gun possession.

7   Furthermore, given the ambiguous nature of the alleged "political message," it was completely

8   unclear from the face of the complaint that the likelihood was great that this alleged message would

9   be understood by those who received it.

10       As the Ninth Circuit explained, for gun possession to constitute speech, there must be a

11   concrete and necessary relationship between the possession of the gun and the message being

12   communicated.  *See Nordyke*, 319 F.3d at 1190.  In other words, the particularized message being

13   communicated must originate from and be closely tethered to the actual act of gun possession.  In

14   this case, this Court found that Plaintiffs' allegations that they intended to communicate the military

15   and historic importance of guns, the legal education of the general public about guns, and instruct

16   others in safe and responsible gun storage and handling were insufficient.  Simply stated, these

17   allegations lacked the required nexus between the communication (the particularized message) and

18   the actual act of gun possession.  These intended communications did not stem from Plaintiffs'

19   actual possession of a gun.  In fact, each of these messages could have been clearly communicated

20   without the use of a gun at all.  Accordingly, this Court granted Defendants' motion to dismiss

21   Plaintiffs' freedom of expression claim with leave to amend.[9]

22       Plaintiffs subsequently filed a Third Amended Complaint ("TAC")[10] wherein they re-asserted

23   their as applied First Amendment claim.  In an attempt to cure the deficiencies outlined above,

24   Plaintiffs added paragraphs 85 and 86(a)-(g) proffering specific examples of how possession of a

25   firearm at the gun shows conveys particularized messages.  (TAC, p. 33, n.5.)  Defendants

26   _____

27       [8]Docket No. 92.

        [9]Docket No. 97.

28       [10]Docket No. 100.

5

1    subsequently moved to dismiss the Third Amended Complaint.

2        This Court denied Defendants' motion to dismiss and found that although the majority of the

3    supplemental allegations suffered from the same deficiencies as those in the Second Amended

4    Complaint, Plaintiffs had sufficiently articulated an intent to convey a particularized message that

5    would be understood by those who viewed it.  Specifically, Plaintiffs alleged that their act of

6    possessing guns at a gun show serves to convey their firmly-held belief that individuals should have

7    a protected right under the Second Amendment to bear arms, that they "support[] the National Rifle

8    Association's (and the Attorney General's, and the Secretary of State's) interpretation of the Second

9    Amendment," and that they disagree with the Ninth Circuit's decision holding that the Second

10   Amendment "offers no protection for the individual's right to bear arms."  *Nordyke III*, 319 F.3d at

11   1191 (citing *Hickman v. Block*, 81 F.3d 98, 102 (9th Cir. 1996)).

12       In denying Defendants' motion, this Court also found that Plaintiffs sufficiently alleged that

13   there was a great likelihood that observers would understand their message.  For example, Plaintiffs

14   alleged that the attendees of a gun show, many of whom are members of the "gun culture," would

15   readily perceive that the individual carrying the weapon supports the view that individuals should

16   have a protected right to bear arms under the Second Amendment.  Thus, this Court concluded that

17   Plaintiffs had sufficiently alleged that their conduct, at least to the extent described above,

18   constituted speech.

19       Defendants nevertheless argued that even if Plaintiffs had sufficiently pled an as applied First

20   Amendment claim, Plaintiffs' claim failed because: (1) the Ordinance furthers a substantial public

21   interest in protecting the safety of persons on County property that is unrelated to suppressing

22   speech; (2) a sufficiently important governmental interest in regulating non-speech exists that

23   justifies the incidental limitation on Plaintiffs' First Amendment rights; and (3) the Ordinance is a

24   reasonable time, place, and manner restriction.  In responding to Defendants' contentions, this Court

25   explained that such an inquiry would require the Court to consider facts outside of Plaintiffs' Third

26   Amended Complaint exceeding the scope of a Rule 12(b)(6) motion, and therefore were more

27

28

1   appropriately raised in a motion for summary judgment.[11]

2       Against this backdrop, the Court now examines Defendants' motion for summary judgment

3   as to Plaintiffs' claims under the First Amendment and the Equal Protection Clause of the United

4   States Constitution, and Plaintiffs' freedom of expression claim under the California Constitution.

5                               **LEGAL STANDARD**

6       Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is

7   no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

8   law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the

9   initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings,

10  depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence

11  of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving

12  party meets this initial burden, the burden then shifts to the non-moving party to present specific

13  facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324;

14  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The non-movant's

15  bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion

16  for summary judgment.  *Anderson*, 477 U.S. at 247-48.  An issue of fact is material if, under the

17  substantive law of the case, resolution of the factual dispute might affect the case's outcome.  *Id.* at

18  248.  Factual disputes are genuine if they "properly can be resolved in favor of either party."  *Id.* at

19  250.  Thus, a genuine issue for trial exists if the non-movant presents evidence from which a

20  reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the

21  material issue in his or her favor.  *Id.*  "If the evidence is merely colorable, or is not significantly

22  probative, summary judgment may be granted."  *Id.* at 249-50 (internal citations omitted).

23                               **ANALYSIS**

24  **I.      First Amendment Claim**

25       **A.      Standing**

26       Before reaching the merits of Plaintiffs' claim, the Court must first address the threshold

27  issue of standing.  The County contends that Plaintiffs may not make an as applied challenge to the

28  ───────────────
    [11]Docket No. 112.

United States District Court

For the Northern District of California

Ordinance because they did not subject themselves to the regulation before bringing suit.  Plaintiffs argue that the Ordinance makes their gun shows impossible and therefore they have been sufficiently affected to have standing.

Generally, one may not challenge a rule or policy to which one "has not submitted himself by actually applying for the desired benefit."  *Madsen v. Boise State University*, 976 F.2d 1219, 1220 (9th Cir. 1992); *see also United States v. Hugs*, 109 F.3d 1375, 1378 (9th Cir. 1997); *Gerritsen v. City of Los Angeles*, 994 F.2d 570, 575 (9th Cir. 1993).  A central reason for this requirement is to ensure that the challenged policy actually affected the person challenging it.  *See Madsen*, 976 F.2d at 1221-22.

Here, the Court finds that the Ordinance has sufficiently affected Plaintiffs.  Following this Court's Order denying Plaintiffs' request for injunctive relief, Plaintiffs cancelled an upcoming gun show due to: (1) potential allegations of fraud in hosting a gun show without guns; (2) Plaintiffs' inability to produce a written plan to the County for hosting a gun show without guns; and (3) the cancellation of reservations by several of Plaintiffs' vendors and exhibitors.  These circumstances demonstrate that the Ordinance has already directly affected at least one of Plaintiffs' gun shows at the Fairgrounds.  Additionally, as a direct consequence of Plaintiffs' inability to produce a plan for holding a gun show without guns, the County released all of Plaintiffs' reserved dates at the Fairgrounds for the year 2000 and subsequently returned all deposits to Plaintiffs.  For these reasons, the Court finds that Plaintiffs' have been actually affected by the Ordinance and that Plaintiffs have standing to make an as applied challenge.  *See Madsen*, 976 F.2d at 1221-22; *see also United States v. Baugh*, 187 F.3d 1037, 1041 (9th Cir. 1999) (finding that standing existed even though the as applied challengers to the statute had not applied for a permit).

**B.     Gun Possession and Free Expression**

The threshold inquiry for the Court is whether the act of possessing a gun amounts to speech sufficient to sustain Plaintiffs' First Amendment claim.  In evaluating the claim, the Court must inquire whether "[a]n intent to convey a particularized message [is] present, and [whether] the likelihood [is] great that the message would be understood by those who viewed it."  *See Nordyke v. King*, 319 F.3d 1185, 1189 (9th Cir. 2003) (citing *Spence v. Washington*, 418 U.S. 405, 410-11

(1974)).  If the possession of a gun is expressive conduct, the question then becomes whether the County's "regulation is related to the suppression of free expression."  *Texas v. Johnson*, 491 U.S. 397, 403 (1989).  Such regulations that are related to a government interest in suppressing expression are subject to strict scrutiny.  *See id.*; *United States v. O'Brien*, 391 U.S. 367, 377 (1968).  Conversely, regulations that are unrelated to a government interest in suppressing free expression are subject to a less stringent standard.  *See O'Brien*, 391 U.S. at 377.

Here, the County does not contest that gun possession in the context of a gun show may involve certain elements of protected speech.[12]  As the Court previously noted in its Order denying Plaintiffs' request for a preliminary injunction, the Supreme Court has warned that there is a "limitless variety of conduct that can be 'speech' whenever the conduct intends thereby to express an idea."  *O'Brien*, 391 U.S. at 376.  The protection is not limited to the written or spoken word.  A person also may express his thoughts through conduct in which he purposefully engages.  The Supreme Court has recognized that such symbolic speech or expressive conduct lies within the confines of the First Amendment's protection of free speech.  *See, e.g., Brown v. Louisiana*, 383 U.S. 131 (1966) (silent sit-in by black citizens demonstrating against a segregated library); *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503 (1969) (students wearing armbands to protest American military involvement in Vietnam); *Schacht v. United States*, 398 U.S. 58 (1970) (the wearing of United States military uniforms during a dramatic performance to criticize American intervention in Vietnam).

In light of the County's concession, and the existence of competent evidence in the factual record, the Court concludes that there is a triable issue of a fact as to whether Plaintiffs' gun possession in the context of a gun show can qualify as speech and whether Plaintiffs intended to convey a particularized message that was likely to be understood by those who observed it.

---

[12]Also before the Court is Defendants' Motion to Strike Plaintiffs' Expert Report and Declarations of Donald Kilmer, Daryl Davis, Duane Darr, Jess B. Guy, Virgil McVicker, Mike Fournier, Russell Nordyke, and Sallie Noryke.  (Docket No. 153.)  Because the County has conceded for purposes of their Motion for Summary Judgment that gun possession may constitute expressive conduct, the Court finds that Plaintiffs' expert report is not relevant.  Furthermore, the Court finds that the expert report does not contain any specialized knowledge to assist the trier of fact understand the evidence.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc*, 509 U.S. 579, 591 (1993); Fed. R. Evid. 702.  For these reasons, the Court **GRANTS** Defendants' Motion to Strike Plaintiffs' Expert Report.  Due to the County's concession, the Court finds that the content of the remaining declarations is irrelevant to the remaining issues.  For this reason, the Court **DENIES** Defendants' Motion to Strike, as moot.

United States District Court

For the Northern District of California

1    Specifically, Plaintiffs have offered evidence that their act of possessing guns at a gun show serves

2    to express their firmly-rooted beliefs that individuals should have a protected right under the Second

3    Amendment to bear arms; that they support the National Rifle Association's interpretation of the

4    Second Amendment; and that they object to the Ninth Circuit's decision holding that the Second

5    Amendment "offers no protection for the individual's right to bear arms." *Nordyke*, 319 F.3d at

6    1191 (citing *Hickman v. Block*, 81 F.3d 98, 102 (9th Cir. 1996)).  The Court now turns to whether

7    the Ordinance is related to the suppression of that speech.

8        **C.      Is the County's Ordinance Related to the Suppression of Free Expression**

9            Having determined that the issue of whether Plaintiffs' gun possession is expressive conduct

10   is not amenable to summary judgment on this record, the Court now turns to evaluate whether the

11   County's Ordinance is related to the suppression of free expression.  *Nordyke*, 319 F.3d at 1189.

12   The parties as an initial matter, dispute the standard of review that guides the Court's analysis of the

13   impact of the Ordinance upon Plaintiffs' right of free expression.  Plaintiffs maintain that the

14   asserted governmental interest of the Ordinance, as applied to them, is related to the suppression of

15   their free speech and therefore the Court should examine the Ordinance under the "strict scrutiny"

16   standard set forth in *Johnson*.  *See Johnson*, 491 U.S. at 403.  Defendants argue that the Ordinance is

17   not related to the suppression of speech and therefore the less strict content-neutral standard set forth

18   in *O'Brien* applies.  *See O'Brien*, 391 U.S. at 376-77.  Having outlined the parties' respective

19   positions, the Court proceeds to analyze these cases, in the context of the current record, to

20   determine the applicable standard of review which governs the Court's evaluation of the Ordinance

21   at issue.

22       **1.      *Texas v. Johnson***

23           In *Texas v. Johnson*, the Supreme Court held that a Texas statute criminalizing the

24   desecration of venerated objects, including the United States flag, was unconstitutional as applied to

25   an individual, Johnson, who had set fire to a flag during a political demonstration.  *Johnson*, 491

26   U.S. at 420.  The Texas statute provided that "[a] person commits an offense if he intentionally or

27   knowingly desecrates [a] national flag," where "desecrate" meant to "deface, damage, or otherwise

28   physically mistreat in a way that the actor knows will seriously offend one or more persons likely to

**United States District Court**
For the Northern District of California

observe or discover his action." *Id*. at 400 (citing Tex. Penal Code Ann. § 42.09 (1989)).  The Court first held that Johnson's flag-burning was "conduct 'sufficiently imbued with elements of communication' to implicate the First Amendment." *Id*. at 406 (citation omitted).  The Court rejected the State's contention for the application of the less stringent standard announced in *O'Brien*.  *Id*. at 406.  The Court reasoned that the State's asserted interest "in preserving the flag as a symbol of nationhood and national unity," was an interest "related 'to the suppression of free expression'" because the State's concern with protecting the flag's symbolic meaning was implicated "only when a person's treatment of the flag communicates some message." *Id*. at 410. The Court stated that such a restriction will be subject to "the most exacting scrutiny. " *Id*. at 412 (citing *Boos v. Barry*, 485 U.S. 312, 321 (1988)).  Such a level of scrutiny requires the State actor "to show that the regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Boos*, 485 U.S. at 321 (citations omitted).

### 2. *United States v. O'Brien*

In *United States v. O'Brien*, the Supreme Court held that when "'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *O'Brien*, 391 U.S. at 376.  *O'Brien* involved a challenge to a federal statute making it illegal to "forge[], alter[], knowingly destroy[], knowingly mutilate[], or in any manner change[] any [Selective Service certificates]." *Id*. at 370 (citing 1965 Amendment to § 12(b)(3) of the Universal Military Training and Service Act).  The Supreme Court stated,

> We think it clear that a government regulation is sufficiently justified [1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id*. at 377.  In finding that the statute met each of these requirements, the Court reasoned that because of the Government's substantial interest in assuring the continuing availability of issued Selective Service certificates, because the statute was an appropriately narrow means of protecting this interest and condemned only the independent noncommunicative impact of conduct within its

reach, and because the noncommunicative impact of the act of burning a registration certificate frustrated the Government's interest, a sufficient governmental interest was shown to justify the defendant's conviction. *Id*. at 382.

In this case, the Court finds that the *O'Brien* test provides the appropriate standard of review of the Ordinance. Unlike the State's interest in *Johnson*, the County has an interest unrelated to the suppression of free expression. In *Johnson*, the Texas statute focused on the communicative aspect of the actor's conduct by prohibiting desecration of the flag in a way that the actor knew would seriously offend one or more persons likely to observe or discover his action. *Johnson*, 491 U.S. at 400. There, the State's asserted interested in preservation of the flag as a symbol of national unity was an interest directly related to the suppression of the actor's free expression and communicative conduct. *Id*. at 410. Here, the County's interest is not in suppressing Plaintiffs' messages about guns. The interest that fueled the promulgation of the Ordinance at issue is the prevention of violence and the preservation of safety on county property. Thus, in direct contrast to the State's interest in *Johnson*, the County's interest is unrelated to the communicative aspect of the conduct at issue. Because of these differences, this Court finds the *Johnson* strict scrutiny standard inappropriate for the analysis of this case. Instead, the Court will apply the four-part *O'Brien* test.

### 3. *O'Brien* As Applied to Plaintiffs

The County contends that the Ordinance satisfies the *O'Brien* test and that there are no factual issues that preclude a grant of summary judgment on this record. According to the County, there is an important governmental interest in seeking to ensure public safety on county property, and that the governmental interest is unrelated to the suppression of Plaintiffs' free expression. The County asserts that the incidental restriction on Plaintiffs' ability to conduct their gun shows, in the precise manner Plaintiffs wish, is no greater than is essential to the furtherance of the County's content-neutral interest. In response, Plaintiffs insist that the isolated statements of a particular county legislator evince a content-based legislative motive behind the Ordinance. Plaintiffs posit that such improper motive and the absence of a sufficient governmental interest preclude the Ordinance from satisfying the *O'Brien* test. The Court now turns to the Ordinance as applied to Plaintiffs under the four-part *O'Brien* test.

United States District Court
For the Northern District of California

### a.        Constitutional Power of Government

The first prong of the *O'Brien* test requires the regulation at issue to be within the constitutional power of the government. *O'Brien*, 391 U.S. at 377. This Court previously concluded that the Ordinance satisfied the first element of the *O'Brien* test in the context of a facial challenge. (Order Denying Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, at ¶ 7-9.) Here, Plaintiffs argue, without any substantive explanation, that the California Supreme Court's decision in *Nordyke v. King*, 27 Cal. 4th 875 (2002) demands a different result. The Court disagrees. The promulgation of the Ordinance is certainly within the constitutional powers of the County. Plaintiffs have failed to identify any triable issues of fact that could result in a different conclusion.

### b.        Substantial Government Interest

The second prong of the *O'Brien* test requires that the regulation further a substantial government interest. *O'Brien*, 391 U.S. at 377. In applying the second step of the *O'Brien* test, the Supreme Court employs a balancing test, asking whether the alleged governmental interest is sufficiently substantial to justify the resultant impact on free expression. *See, e.g.*, *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789 (1984). In ruling on Plaintiffs' motion for a preliminary injunction, this Court previously concluded that the Ordinance satisfied the second element of the *O'Brien* test in the context of a facial challenge. Now, Plaintiffs argue that "as applied" to gun shows at the Fairgrounds, the Ordinance fails to further a substantial government interest. The Court disagrees with Plaintiffs and finds that the Ordinance does further a substantial government interest as applied to them.

In support of meeting their initial burden, the County points to its findings that during the first five years of the 1990s in Alameda County there were 879 homicides committed using firearms, and an additional 1,647 victims were hospitalized with gunshot injuries. Alameda County Gen. Ord. Code, ch. 9.12, § 9.12.120, subd. A. The County also found that firearms were the leading cause of death among people between the ages of fifteen and twenty four in Alameda County and that between July 1, 1996 and June 30, 1997, 136 juveniles were arrested in Oakland for gun-related offenses. *Id.* The July 4, 1998 shooting at the Fairgrounds further evidences that the Ordinance

United States District Court

For the Northern District of California

1    furthers a substantial interest in promoting public safety on county property, and especially at the

2    Fairgrounds.  As a result of the County's showing, the burden shifts to Plaintiffs to present specific

3    facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324; *Matsushita Elec.*

4    *Indus. Co.*, 475 U.S. at 586-87.

5        Plaintiffs argue that the County does not have a substantial interest as applied to Plaintiffs'

6    gun shows.  Specifically, Plaintiffs point to the County's admission that there is no evidence of any

7    violent criminal activity occurring at any of Plaintiffs' guns shows.  However, Plaintiffs cite no

8    specific facts indicating that the County's findings on gun violence within the county were

9    inaccurate.  *See Clark v. City of Lakewood*, 259 F.3d 996, 1015 (9th Cir. 2001) (finding that city

10   may have improperly relied upon certain evidence in passing ordinance, therefore a genuine issue of

11   material fact existed whether the regulation furthered a significant government interest).  Similarly,

12   Plaintiffs cite no specific facts rebutting the County's interest in promoting public safety on county

13   property.  As a result, Plaintiffs have failed to present evidence establishing the existence of a triable

14   issue of material fact.  Therefore, the Court finds as a matter of law that the County's public safety

15   interest is sufficiently substantial to justify the resultant impact on Plaintiffs' free expression and

16   thus satisfies the second part of the *O'Brien* test.

17              **c.        Ordinance's Relationship to the Suppression of Free Expression**

18       The third element of the *O'Brien* test requires the governmental interest be unrelated to the

19   suppression of free expression.  *O'Brien*, 391 U.S. at 377.  Plaintiffs argue that the Ordinance is

20   related to the suppression of free speech because: (1) the County's underlying legislative intent in

21   promulgating the Ordinance was to prohibit gun shows; and (2) the Ordinance includes an exception

22   for entertainment-related events and is therefore content-based.  In response, the County argues that

23   its underlying legislative intent is not proper for the Court to consider and that an examination of the

24   Ordinance's exception, in its entirety, demonstrates that the Ordinance is content-neutral.  The Court

25   will address Plaintiffs' two arguments below.

26       First, regarding the County's underlying legislative intent, Plaintiffs argue that the County's

27   public safety interest is a pretextual justification.  In support of their argument Plaintiffs point to a

28   statement made by a member of the County Board of Supervisors, Mary King ("King").

United States District Court

For the Northern District of California

1   Specifically, on May 20, 1999, King sent a memorandum to County Counsel requesting counsel to

2   research a way to prohibit gun shows on county property.  However, the Supreme Court has

3   counseled against consideration of alleged illicit legislative motive in determining a statute's

4   constitutionality.  *O'Brien*, 391 U.S. at 383.  A court may not strike down an otherwise

5   constitutional statute on the basis of an alleged illicit legislative motive.  *Id*.  As the Court

6   specifically stated in *O'Brien*,

> Inquiries into congressional motives or purposes are a hazardous matter.  When the issue is simply the interpretation of legislation, the Court will look to statements by legislators for guidance as to the purpose of the legislature, because the benefit to sound decision-making in this circumstance is thought sufficient to risk the possibility of misreading Congress' purpose.  It is entirely a different matter when we are asked to void a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of Congressmen said about it.  What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.  We decline to void essentially on the ground that it is unwise legislation which Congress had the undoubted power to enact and which could be reenacted in its exact form if the same or another legislator made a "wiser" speech about it.

15   *Id*. at 383-84.  Despite the Supreme Court's guidance to the contrary, Plaintiffs cite to four cases in

16   support of their contention that this Court should consider King's statement.  However, the authority

17   relied upon by Plaintiffs does not support the proposition that this Court may consider King's

18   statement in determining whether the County's interest is related to the suppression of free

19   expression.

20   Plaintiffs cite *United States v. Eichman*, 496 U.S. 310 (1990).  In *Eichman*, the Supreme

21   Court found that the Flag Protection Act of 1989, 18 U.S.C. § 700, was inconsistent with the First

22   Amendment.  *Eichman*, 496 U.S. at 319.  In doing so, the Court reasoned that although the Act

23   contained "no explicit content-based limitation, it [was] nevertheless clear that the Government's

24   asserted interest [was] 'related to the suppression of free expression.'"  *Id*. at 315 (citing *Johnson*,

25   491 U.S. at 410).  In analyzing the government's interest, the Court did not look to statements made

26   by legislators, but instead the Court examined "the precise language of the Act's prohibitions,

27   [which] confirm[ed] Congress' interest in the communicative impact of flag desecration."  *Id*. at 317.

28   Therefore, *Eichman* does not support Plaintiffs' argument that it is proper to consider King's

1   statements.

2       The Court finds the remaining authority cited by Plaintiffs regarding the propriety of King's

3   statements does not support their position either. *See Members of City Council v. Taxpayers for*

4   *Vincent*, 466 U.S. 789, 804 (1984) (rejecting plaintiff's as applied First Amendment challenge and

5   finding that a municipal ordinance banning the posting of signs on public property was content

6   neutral and therefore constitutional under an *O'Brien* analysis); *Perry Educ. Ass'n v. Local*

7   *Educator's Ass'n*, 460 U.S. 37, 44-49 (1983) (finding that a school district's preferential access to its

8   interschool mail system was not unconstitutional under the First Amendment because the system

9   was not a public forum); *Niemotko v. Maryland*, 340 US. 268, 271-73 (1951) (holding Jehovah's

10  Witnesses defendants' convictions were in violation of their rights to equal protection of the law in

11  exercise of their freedoms of speech and religion protected by the First and Fourteenth Amendments

12  where defendants' only basis for arrest was that defendants were using public park for Bible talks

13  without a permit). The Court finds that it is not proper to consider King's statements. Accordingly,

14  the Court finds that King's statements do not raise a triable issue of fact with respect to the third

15  *O'Brien* factor.

16      Turning to Plaintiffs' second argument, regarding the Ordinance's exception for

17  entertainment-related events, Plaintiffs claim that the timing and existence of the exception

18  demonstrates that the Ordinance is related to the suppression of Plaintiffs' free expression.

19  However, as the County points out, Plaintiffs fail to explain how the exception is grounded in any

20  disagreement with any message Plaintiffs convey by possessing firearms. Additionally, the

21  exception contains the unqualified word, "event," that preserves the possibility that any number of

22  events can satisfy the exception provided that the firearms are secured when not in the actual

23  possession of the participant, including Plaintiffs' gun shows.[13] As the record indicates, the County

24  has allowed "events," other than "motion picture, television, video, dance and theatrical

25  productions" where the authorized participants have possessed firearms, and those firearms have

26  been secured when not in the actual possession of the participant. (Pickering Decl., at ¶ 13.)

27

28          [13]Admittedly, Plaintiffs would not be permitted to allow the attendees to actually possess the firearms while on county property. However, the Ordinance's exception does not proscribe the sale, exhibition, or discussion of firearms on county property.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Plaintiffs offer no specific probative evidence establishing that as applied to Plaintiffs, the

2    Ordinance's exception for entertainment-related events is content-based.  Nothing on the face of the

3    statute, or its application in the factual record of this case, indicates that the County's interest is

4    related to suppression of Plaintiffs' First Amendment rights of free expression.  Thus, the Court

5    finds that as a matter of law, the County's Ordinance, as applied to Plaintiffs, is unrelated to the

6    suppression of free expression.

7         For these reasons, the Court finds that the Ordinance, as applied to Plaintiffs, satisfies the

8    third part of the *O'Brien* test.

9                                    **d.      Narrowly Tailored**

10        The fourth element of the *O'Brien* test requires the incidental restriction on alleged First

11   Amendment freedoms be no greater than is essential to the furtherance of that interest.  The County

12   argues that the Ordinance does not restrict speech, and even if it does, the Ordinance is narrowly

13   tailored to achieve the important government interest of protecting public safety.  Plaintiffs counter,

14   that the existing state laws intended to punish criminal use of firearms are a sufficient lesser

15   restrictive means of controlling weapons at the Fairgrounds.

16        This Court has previously addressed the issue of whether the Ordinance is narrowly tailored

17   in its order denying Plaintiffs' request for a preliminary injunction.  In examining Plaintiffs' facial

18   challenge to the Ordinance, this Court noted that "several potentially less onerous alternatives . . .

19   are specifically preempted by state law."[14]  Currently, in examining Plaintiffs' as applied challenge,

20   Plaintiffs are similarly unable to identify any factual dispute regarding a non-preempted less

21   restrictive alternative.  As Defendants correctly point out, it is not appropriate for a court to consider

22   the Ordinance's current success in preventing gun-related crime.  *See Clark v. Comm. for Creative*

23   *Non-Violence*, 468 U.S. 288, 296-97 (1984) (stating that the validity of a regulation need not be

24   judged solely by reference to the demonstration at hand in rejecting plaintiffs' as applied challenge

25   to regulation prohibiting sleeping overnight in a federal park); *Ward v. Rock Against Racism*, 491

26   U.S. 781, 801 (1989) (stating "the validity of the regulation depends on the relation it bears to the

27   overall problem the government seeks to correct, not on the extent to which it furthers the

28

     [14]Docket No. 53.

                                                    17

United States District Court

For the Northern District of California

1  government's interests in an individual case."); *One World One Family Now v. City and County of*

2  *Honolulu*, 76 F.3d 1009, 1013 (9th Cir. 1996) (citing *Ward*, stating that the validity of an ordinance

3  banning sales of message-bearing T-shirts on city streets did not depend on the extent to which it

4  furthered the city's interest with regard to plaintiffs' sales, but depended on the extent to which it

5  furthered the city's overall goal of protecting public safety).  Similarly, the Court cannot consider

6  Plaintiffs' commercial interest in examining the restrictive scope of the Ordinance.  *See Spokane*

7  *Arcade, Inc. v. City of Spokane*, 75 F.3d 663 (9th Cir. 1996).

8          Plaintiffs' stated purposes for their gun shows demonstrates that the Ordinance is no more

9  restrictive than necessary.  Plaintiffs list 15 primary purposes for their gun shows:

10                 [1] To obtain political information regarding my Constitutional Rights,
                   including but not limited to the right to keep and bear firearms; [2] To
11                 assemble with other individuals and organizations to discuss the issues
                   and pending legislation that effect my Constitutional Rights, including
12                 but not limited to, my right to own, possess, and trade firearms; [3] To
                   obtain the latest information regarding the safe, responsible and lawful
13                 ownership and storage of firearms; [4] To obtain the latest information
                   regarding the firearms industry, with specific reference to
14                 developments in technology and safety; [5] to purchase and/or sell
                   firearms, firearm accessories, ammunition, safety devices and gun
15                 safes; [6] To petition political candidates, both those elected and
                   currently campaigning, on issues of government policy; [7] To obtain
16                 information from political candidates, both those in office and
                   campaigning, on issues of government policy; [8] To obtain and/or
17                 offer for sale historical and philosophical information from
                   organizations sympathetic to, but not directly involved, with firearms
18                 issues; [9] To obtain information and engage in the trade of stamps
                   and coins; [10] To obtain information and engage in the trade of
19                 knives; [11] To obtain information and engage in the trade of antiques
                   and/or other collectibles; [12] To obtain information and engage in the
20                 trade of historical and military memorabilia; [13] To obtain
                   information and engage in the trade of political souvenirs such as:
21                 buttons, bumper-stickers, t-shirts, books and signs; [14] To circulate
                   and sign petitions for state and local initiatives; [and] [15] To engage
22                 in the fellowship and affiliation of like-minded individuals in a
                   market-place of ideas and products, and to enjoy our common culture
23                 and collective heritage.

24  (TAC, ¶ 59 (a) through (o).)  As the County points out, each of these purposes may be fulfilled

25  without the actual presence of a firearm.  The only putative purpose for which the presence of a

26  firearm is most likely preferable is the sale of a firearm.  However, nothing in the Ordinance

27  prohibits such a sale.  Although replicas, pictures, or other representations of firearms may not have

28  the same impact as an actual firearm, the potential hazzards of thousands of people wielding

18

1  firearms together on county property justifies the resulting burden imposed by the Ordinance.

2  *Vlasak v. Super. Court of Cal.*, 329 F.3d 683, 691 (9th Cir. 2003) (finding that a municipal ordinance

3  that resulted in the prohibition of "wooden bull hooks" was narrowly tailored and did not offend

4  animal rights demonstrator's First Amendment rights, in part because replicas and pictures could be

5  used.)

6       Plaintiffs have not cited to, or proffered, any evidence to suggest that the Ordinance is not

7  narrowly tailored to the County's interest in preventing gun-related crime on county property.  For

8  these reasons, the Court finds that there is no triable issue of fact as to whether the Ordinance is

9  narrowly tailored to the County's interests.  The Ordinance therefore satisfies the fourth prong of the

10 *O'Brien* test.

11      For these reasons, the Court finds that the Ordinance, as applied to Plaintiffs, satisfies each

12 part of the *O'Brien* test.  The Court therefore **GRANTS** Defendants' motion for summary judgment

13 as to Plaintiffs' First Amendment claim.

14      **D.      Time, Place, and Manner Restriction**

15      The County argues that even assuming the Ordinance has an impact on speech, it is

16 nevertheless valid as a reasonable time, place, and manner restriction.  Plaintiffs contend that the

17 Ordinance is not a restriction, but instead a prohibition that fails under the test set forth in *City of

18 Renton v. Playtime Theaters Inc*., 475 U.S. 41 (1986).

19      The Court finds that the Ordinance is a valid time, place, and manner restriction.  The test

20 applied for time, place, and manner restrictions differs from the *O'Brien* test.  *See Clark v.

21 Community for Creative Non-Violence*, 468 U.S. 288, 298 (1984); *Heffron v. Int'l Soc'y for Krishna

22 Consciousness, Inc*., 452 U.S. 640, 649-654 (1981).  In order to be a valid time, place, and manner

23 restriction, the regulation: (1) must not be based upon the content of speech; (2) must serve a

24 significant government interest; and (3) must leave open ample alternative channels for

25 communication of information.  *Heffron*, 452 U.S. at 649-654 (citations omitted).

26      In *Clark*, the Supreme Court agreed with the district court's decision in granting summary

27 judgment in favor of the government's regulation.  *Clark*, 468 U.S. at 297-98.  The Court upheld a

28 regulation, that when applied to the plaintiff demonstrators, prohibited them from actually sleeping

19

in a park where they had constructed "tent cities" near the White House to call attention to the plight of the homeless. *Id*. at 289. First, the Court found that the regulation was content neutral because it was not applied to regulate the plaintiffs' message. *Id*. at 295. Second, the Court found the regulation served a significant government interest of maintaining parks in an attractive condition, available for all to use. *Id*. at 296. Lastly, the Court found that even though the plaintiffs could not actually sleep in the park, the regulation preserved other avenues of communicating the plaintiffs' message. *Id*. at 295. The Court noted that the regulation did not prevent plaintiffs from leaving their symbolic tents intact. *Id*.; *see also Heffron*, 452 U.S. at 2568 (holding that regulation prohibiting sale or distribution on fair grounds of any merchandise except from fixed locations was a valid time, place, and manner restriction).

Here, the Ordinance meets each of the requirements of a valid time, place, and manner restriction. First, the Court has already found the Ordinance is content neutral as applied to Plaintiffs. Second, the Ordinance furthers a significant county interest in reducing the risk of shootings and gun violence on County property. Furthermore, in examining the County's interest, as applied to the Plaintiffs' gun shows, the Court finds that curtailing the possession of guns on county property has a natural and probable affect of limiting the risk of overall shootings and gun violence on County property. *See Clark*, 468 U.S. at 297 (noting that "it is evident from our cases that the validity of [the] regulation need not be judged solely by reference to the demonstration at hand"). Finally, the Ordinance leaves ample alternate channels for the communication of Plaintiffs' message. The Ordinance does not limit discussion about guns or gun related issues on county property. *See Vlasak*, 329 F.3d at 691 (stating that the First Amendment does not require the government to allow plaintiffs to engage in the particular method of communication which plaintiffs believe to be most effective). Similarly, the Ordinance does not prohibit possession of guns on private property within the County. Furthermore, as the County points out, the evidence in the record indicates that Plaintiffs have had over twenty two gun shows in California since 2005. Plaintiffs have ample alternate channels available for communication of their gun-related messages. As a result, the County has established the absence of a triable issue of material fact.

In response, Plaintiffs cite to no evidence in the record to suggest there is a triable issue of

20

United States District Court

For the Northern District of California

1  fact regarding any of the factors used to evaluate the validity of a time, place, and manner restriction.

2  Plaintiffs' citation to *City of Renton* is similarly unavailing.  *City of Renton* dealt with the analysis of

3  the city's zoning ordinance prohibiting adult theaters from locating within 1,000 feet of any

4  residential zone and the secondary effects of adult theaters on the surrounding community.  *City of*

5  *Renton*, 475 U.S. at 930-31.  In *City of Renton*, the Supreme Court held that the zoning ordinance

6  was a valid time, place, and manner restriction.  *Id*. at 932-33.

7       Therefore, the Court finds there is no basis, on this record, to establish a triable issue of fact

8  as to whether the Ordinance is a valid time, place, and manner restriction.  For these reasons, the

9  Court finds the Ordinance to be a valid time, place, and manner restriction as applied to Plaintiffs.

10  **II.       Equal Protection Claim**

11       The County insists that Plaintiffs cannot maintain an equal protection claim because

12  Plaintiffs cannot show that the Ordinance is applied in a discriminatory manner or imposes different

13  burdens on different classes of people.  Plaintiffs counter that the timing of the Ordinance's

14  exception was discriminatory, that the Ordinance's exception is discriminatory on its face, and that

15  the Ordinance as applied treats Plaintiffs in a disparate manner compared the Scottish Games and

16  Outdoor Sportsman Shows.  Plaintiffs contend that their disparate treatment is an equal protection

17  violation of their fundamental right to free speech.

18       The first step in equal protection analysis is to demonstrate a governmental classification.

19  *Country Classic Dairies, Inc. v. State of Montana, Dep't of Commerce Milk Control Bureau*, 847

20  F.2d 593, 596 (9th Cir. 1988).  To accomplish this, a plaintiff can show that the law is applied in a

21  discriminatory manner or imposes different burdens on different classes of people.  *Christy v. Hodel*,

22  857 F.2d 1324, 1331 (9th Cir. 1988).  It is necessary for a plaintiff to identify a "similarly situated"

23  class against which the plaintiff's class can be compared.  *Attorney General v. Irish People, Inc*.,

24  684 F.2d 928, 946 (D.C. Cir. 1982) ("Discrimination cannot exist in a vacuum; it can be found only

25  in the unequal treatment of people in similar circumstances").  "The goal of identifying a similarly

26  situated class [ ] is to isolate the factor allegedly subject to impermissible discrimination."  *United*

27  *States v. Aguilar*, 883 F.2d 662, 706 (9th Cir. 1989).

28       The next step is to determine the applicable level of scrutiny for the classification.  *Country*

1   *Classic Dairies*, 847 F.2d at 596.  A legislative classification will be subjected to strict judicial

2   scrutiny if it employs a "suspect" class or if it classifies in such a way as to impair the exercise of a

3   fundamental right.  *Hodel*, 857 F.2d at 1331 (citing *Clark v. Jeter*, 486 U.S. 456, 461 (1988)

4   ("Classifications based on race or national origin, and classifications affecting fundamental rights,

5   are given the most exacting scrutiny.") (citations omitted)).  However, "where the law classifies

6   persons on a non-suspect basis for the exercise of liberties which are not fundamental constitutional

7   rights," the law will be upheld if it rationally relates to a legitimate governmental objective.  *Hodel*,

8   857 F.2d at 1331 (citing *Dandridge v. Williams*, 397 U.S. 471, 485, (1970)).  The Court now

9   determines whether there exists a relevant classification on this record, and if so, the appropriate

10  level of scrutiny to apply to the classification.

11          **A.      Classification**

12          Plaintiffs argue that the Ordinance's exception treats them differently than it treats the

13  Scottish Games and the Outdoor Sportsman Shows.  The County argues that Plaintiffs are not

14  "similarly situated" to the Scottish Games, the Outdoor Sportsman Shows, or any other group

15  invoking the Ordinance's exception for authorized participants "in a motion picture, television,

16  video, dance, or theatrical production or event when the participant lawfully uses the firearm as part

17  of that production or event, provided that when such firearm is not in the actual possession of the

18  authorized participant, it is secured to prevent unauthorized use." (Alameda County Gen. Ord. Code,

19  ch. 9.12, § 9.12.120, subd. F.)

20          However, the Court need not reach the classification issue because, as described below, even

21  if Plaintiffs have successfully established a classification, the appropriate standard of review would

22  be rational basis.  As more fully described below, because this Court finds that the Ordinance and its

23  exception is rationally related to a legitimate government interest, Plaintiff's equal protection claim

24  necessarily fails.

25          **B.      Fundamental Rights**

26          Plaintiffs' equal protection argument fails because the Ordinance and its exception survive

27  rational basis scrutiny.  Plaintiffs' argument here is directed toward securing review under the

28  standard of strict scrutiny, on the ground that the Ordinance and its exception implicate Plaintiffs'

First Amendment rights.  That contention has been disposed of in the First Amendment discussion above.  *See Jones Intercable of San Diego, Inc. v. City of Chula Vista*, 80 F.3d 320, 327 (9th Cir. 1996) (finding that the regulation was content neutral and therefore did not trigger strict scrutiny under either the First Amendment or the Equal Protection Clause.) (citations omitted).  When the regulation at issue does not violate the individual's exercise of a fundamental right, the regulation need only survive rational basis review for equal protection purposes.  *See Johnson v. Robinson*, 415 U.S. 361, 375 n.14 (1974) ("Unquestionably, the free exercise of religion is a fundamental constitutional right.  However, since . . . the Act does not violate appellee's right of free exercise of religion, we have no occasion to apply to the challenged classification [for equal protection purposes] a standard of scrutiny stricter than the traditional rational-basis test").  Above, the Court has already found that the Ordinance and its exception, as applied to Plaintiffs, does not violate their fundamental right of free speech under the First Amendment.  In doing so the Court determined that the Ordinance and its exception, as applied to Plaintiffs, furthered a substantial government interest.

Accordingly, the Court also finds that the Ordinance and its exception, as applied to Plaintiffs, is rationally related to a legitimate government interest.  As noted previously, the County's interest is to ensure public safety on county property.  In support of this interest, the County points to its findings that during the first five years of the 1990s in Alameda County there were 879 homicides committed using firearms, and an additional 1,647 victims were hospitalized with gunshot injuries.  Alameda County Gen. Ord. Code, ch. 9.12, § 9.12.120, subd. A.  The County also found that firearms were the leading cause of death among people between the ages of fifteen and twenty four in Alameda County and that between July 1, 1996 and June 30, 1997, 136 juveniles were arrested in Oakland for gun-related offenses.  *Id*.  As further evidence of their governmental interest, the County cites to the July 4, 1998 shooting at the Fairgrounds.  The Ordinance is rationally related to the County's interests because it places restrictions on the particular individuals who may lawfully possess a firearm on county property.  The Ordinance's exception is rationally related to the County's interests because it allows for firearm possession in certain circumstances where the individual in possession is a peace officer or other "authorized participant" in an "event." (Alameda County Gen. Ord. Code, ch. 9.12, § 9.12.120, subd. F.)   Because the Ordinance and its

1  exception have a rational basis to the County's public safety concerns, and do not otherwise offend

2  Plaintiffs' fundamental rights, Plaintiffs' equal protection claim fails.

3      For these reasons, the Court finds that the Ordinance, on its face and as applied to Plaintiffs,

4  does not violate the Equal Protection clause.  The Court therefore **GRANTS** Defendants' motion for

5  summary judgment as to Plaintiffs' Equal Protection claim.

6  **III.    State Law Claim**

7      In addition to Plaintiffs' First Amendment and Equal Protection claims under the United

8  States Constitution, Plaintiffs also allege a freedom of expression cause of action under the

9  California Constitution.  (TAC, ¶ 72.)  Defendants contend that this Court should decline to exercise

10  supplemental jurisdiction over Plaintiffs' remaining state law cause of action.

11      As long as the complaint sets forth a claim "arising under" federal law, the district court may

12  adjudicate state law claims that are transactionally related to the federal claim.  *See* 28 U.S.C. §

13  1367(a).  The fact that the court rules against plaintiff and dismisses the federal claim prior to trial

14  does not automatically oust the court of supplemental jurisdiction.  *See* Judge William W. Schwarzer

15  et al., *Federal Civil Procedure Before Trial* § 2:145.2 (2006).  The dismissal is a factor for the court

16  to consider in deciding whether to decline to exercise its supplemental jurisdiction.  A court has

17  discretion to retain the supplemental state law claim and grant relief thereon.  28 U.S.C. §

18  1367(c)(3); *see United Mine Workers v. Gibbs*, 383 U.S. 715, 728 (1966); *Brady v. Brown*, 51 F.3d

19  810, 816 (9th Cir. 1995).  The court may decline to exercise supplemental jurisdiction where any of

20  the following factors exist: (1) the state law claim involves a novel or complex issue of state law; (2)

21  the state law claim substantially predominates over the claim on which the court's original

22  jurisdiction is based; (3) the district court has dismissed the claims on which its original jurisdiction

23  was based; or (4) "in exceptional circumstances, there are other compelling reasons for declining

24  jurisdiction."  28 U.S.C. § 1367(c) (1)-(4).

25      Here, Plaintiffs have failed to even allege which portions of the California Constitution are

26  implicated under their claim.  Additionally, the Court has dismissed Plaintiffs' claims upon which

27  original jurisdiction was based.  For these reasons, the Court finds Plaintiffs' California

28  constitutional claims more appropriately litigated in state court.

1   ///

2   ///

3                              **CONCLUSION**

4        For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment

5   as to Plaintiffs' First Amendment and Equal Protection Claims that were based on the United States

6   Constitution.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining

7   state law cause of action.

8

9   **IT IS SO ORDERED.**

10

11

12  Dated: March 31, 2007

13                                                    MARTIN J. JENKINS
                                                      UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

25